**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**FRANK BONADIO**

      **Plaintiff,**

v.                                                                    **Civil Action No. 4:13-cv-108**

**OCWEN LOAN SERVICING, LLC,**
**THE HUNOVAL LAW FIRM, POORE**
**SUBSTITUTE TRUSTEE, LTD.,**
**DAVID TKACH, AND OCWEN LOAN**
**SERVICING BOARD OF DIRECTORS,**

      **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Ocwen Loan Servicing, LLC ("Ocwen"), and Ocwen Loan Servicing Board of Directors ("Ocwen Board") (collectively, "Defendants") by counsel, hereby submit their Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff's Complaint fails to state a claim against Defendants upon which relief may be granted.  For the reasons set forth more particularly below, Plaintiff's Complaint, and all claims therein, should be dismissed with prejudice.

## I.       PRELIMINARY STATEMENT

Plaintiff's claims must be dismissed because he does not and cannot state a claim for which relief can be granted.  Plaintiff's Complaint is a scattershot pleading with conclusory allegations that seek to avoid well-established rights for enforcement of a security interest in property and the contractual obligations Plaintiff agreed to when he executed the Note and Deed of Trust.  While the nature of Plaintiff's claims is difficult to discern given the nearly complete lack of supporting factual allegations, the crux of Plaintiff's Complaint appears to be his

Active 21153175v1 241070.000043

allegations that Defendant Ocwen is required to provide Plaintiff with a loan modification or other loss mitigation alternatives, and to forgo the express contractual right to foreclose on his Property.  There is no dispute that Plaintiff defaulted on his Loan obligations.  Simply put, Plaintiff's claims run contrary to the explicit, contractual right to foreclose in the event of Plaintiff's default

Plaintiff also appears to allege that the "wrong lender" is attempting to foreclose on his Property.  Plaintiff's claim, in essence, is nothing more than a stereotypical "show me the note"[1] pleading that is designed to avoid well-established rights for the enforcement of a security interest in property and to thwart the contractual obligations agreed to by Plaintiff when he executed the Note and Deed of Trust as part of his loan agreement.  Courts in the United States District Court for the Eastern District of Virginia, as well as courts in the Western District and Virginia state courts, have "uniformly dismissed cases premised on similar allegations" as those asserted by Plaintiff.  *Bolouri v. Bank of Am., N.A.*, No. 1:10-cv-225, 2010 U.S. Dist. LEXIS 87170, at *4 n.2 (E.D. Va. Aug. 24, 2010); *see generally Pham v. Bank of N.Y.*, No. 1:12-cv-2, 2012 U.S. Dist. LEXIS 51194 (E.D. Va. Apr. 10, 2012); *Brown v. HSBC Mortgage Corp.*, No. 1:10-cv-1427, 2011 U.S. Dist. LEXIS 80943 (E.D. Va. July 22, 2011); *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642 (E.D. Va. 2010); *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 1:10-cv-149, 2010 U.S. Dist. LEXIS 38827 (E.D. Va. Apr. 16, 2010); *Larota-Florez v. Goldman Sachs*

---

[1]   A "show me the note" claim is a claim in which a plaintiff borrower, typically in default of his or her loan obligations, asserts that the lender, holder, servicer, trustee, or other entity seeking to enforce the loan agreement, must come to court and prove its authority or standing to collect on the loan or foreclose on the secured property.  Such claims have been widely rejected as contrary to the non-judicial foreclosure statutory laws of the Commonwealth of Virginia.  *See Pham v. Bank of N.Y.*, No. 1:12-cv-2, 2012 U.S. Dist. LEXIS 51194, at *11-12 (E.D. Va. Apr. 10, 2012); *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. supp. 2d 714, 720-21 (W.D. Va. 2011); *Zambrano v. HSBC Bank USA, Inc.*, No. 01:09-cv-996, 2010 U.S. Dist. LEXIS 51371, at *16 (E.D. Va. May 25, 2010).

*Mortgage Co.*, 719 F. Supp. 2d 636 (E.D. Va. 2010); *Hammett v. Deutsche Bank*, No. 09-cv-1401, 2010 U.S. Dist. LEXIS 29090 (E.D. Va. Mar. 25, 2010); *Areebuddin v. OneWest Bank F.S.B.*, No. 1:09-cv-1083, 2010 U.S. Dist. LEXIS 28469 (E.D. Va. Mar. 24, 2010); *Merino v. EMC Mortgage Corp.*, No. 1:09-cv-1121, 2010 U.S. Dist. LEXIS 26539 (E.D. Va. Mar. 19, 2010); *Pazmino v. LaSalle Bank, N.A.*, No. 1:09-cv-1173, 2010 U.S. Dist. LEXIS 92912 (E.D. Va. Mar. 18, 2010); *see also Blick v. Wells Fargo Bank, N.A.*, No. 3:11-cv-81, 2012 U.S. Dist. LEXIS 41266, at *15 (W.D. Va. Mar. 27, 2012) (noting that courts routinely reject claims based on "show me the note" theories); *Buzbee v. U.S. Bank, N.A.*, No. CL2010-11329, 2012 Va. Cir. LEXIS 39, at *5 (Va. Cir. May 2, 2012) ("'Show me the note' cases are contrary to Virginia's non-judicial foreclosure laws, which do not require secured creditors to come before the court to prove their authority to foreclose on secured property."); *Schmidt v. HSBC Bank USA, N.A.*, No. CL10-4452, 2011 Va. Cir. LEXIS 249, at *2 (Va. Cir. Sept. 1, 2011) (noting "show me the note" claims are contrary to Virginia's non-judicial foreclosure regime).

Apparently, Plaintiff claims that Defendants do not have legal or equitable authority to collect payments and/or to foreclose on the Property, despite Plaintiff's default of his obligations under the terms of the loan agreement. Essentially, Plaintiff believes that he should not have to pay and be held responsible for his contractual obligations under the Note and Deed of Trust until the holder of the commercial paper is identified. To be clear, Plaintiff does not allege any confusion regarding how or to whom payments are supposed to be made under the terms of the Note. Nor does he allege that there is some other person or entity that has sought to enforce the terms of the Note against him or to exercise the power of sale under the Deed of Trust. This is not a case about legitimate confusion on the part of the borrower. Instead, this case is derived from Plaintiff's fanciful theory that only the original lender, or an appointee of the original

lender, may enforce the terms of the Note.  However, the very loan documents executed by Plaintiff clearly belie his claims.

Plaintiff's attempt to escape his Loan obligations must fail.  Plaintiff's claims are barred because he failed to provide the requisite notice prior to filing the lawsuit, as required by the Deed of Trust.  Further, as stated above, Plaintiffs' "Show Me The Note" claims are clearly contrary to well established Virginia law, and his claim that he is entitled to a loan modification or other loss mitigation flies in the face of the explicit, contractual right to foreclose in the event of Plaintiff's default.  Plaintiff lacks standing to challenge the appointment of the substitute trustee.  Even if Plaintiff had standing, his claims would still fail because the appointment was valid.

To the extent that Plaintiff is asserting claims for defamation, fraud, or the intentional infliction of emotional distress, Plaintiff has failed to adequately plead his claims.  Neither has Plaintiff adequately alleged any breach of contract or any common law duty on the part of Defendants.  Further, any claim for defamation is barred by the Fair Credit Reporting Act ("FCRA"), and Defendants are protected from liability under the doctrine of qualified privilege.  Additionally, any tort claims are barred by the economic loss rule.

There is no dispute in this case that Plaintiff defaulted on his Loan obligations.  Defendant is clearly entitled to foreclose on Plaintiff's Property.  Simply put, Plaintiff cannot state a viable claim, and his Complaint must be dismissed with prejudice.

Active 21153175v1 241070.000043

## II.   STATEMENT OF ALLEGED FACTS[2]

1.      On August 10, 2005, the borrower, Plaintiff Frank J. Bonadio, entered into a loan agreement with Fremont Investment & Loan ("Freemont") in the principal amount of $318,750 (the "Loan").  (Ex. 1 – Note).[3]

2.      As part of his loan agreement with the originator, Fremont, Plaintiff executed an Adjustable Rate Note (the "Note").  Plaintiff signed the Note and initialed each preceding page prior to the signatory page.  (Ex. 1 – Note).

3.      The terms of the Note provided, in relevant part:  "I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  (Ex. 1 – Note ¶ 1).

4.      The Note further provided:  "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."  (Ex. 1 – Note ¶ 7(B).

---

[2]  For purposes of a Motion to Dismiss, the allegations made in Plaintiff's Complaint are construed in the light most favorable to Plaintiff, and all material allegations in the Complaint, as well as any reasonable inferences to be drawn from them are accepted as true.  *See Hosp. Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 740 (1978); *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997).  Accordingly, although Defendants do not agree with the allegations asserted in Plaintiff's Complaint, those allegations are taken as true for purposes of this motion.

[3] The documents attached to or referenced in Plaintiff's pleadings, and documents that are otherwise central to Plaintiff's claims, may be considered by the Court in ruling on the Motion to Dismiss, without converting the motion into a summary judgment motion.  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) (affirming district court's consideration of document referenced in complaint); *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997) ("An exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action."); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd.*, 103 F.3d 351 (4th Cir. 1996) (ruling that documents attached to motion to dismiss considered part of pleadings if referred to in plaintiff's complaint and central to claim).  Here, this includes the Note, attached hereto as **Exhibit 1**, and a full and complete copy of the Deed of Trust, attached hereto as **Exhibit 2**.  Alternatively, Defendants request that the Court take judicial notice of the publicly recorded Deed of Trust.

5.     The Note also provided:

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

(Ex. 1 – Note ¶ 11).

6.     The Note was specially endorsed by the original lender, Freemont, to HSBC Bank U.S.A, National Association, as Trustee for Fremont Home Loan Trust 2005-D, Mortgage-Backed Certificates, Series 2005-D ("HSBC"), "without recourse." (Ex. 1 – Note).

7.     On August 10, 2005, Plaintiff executed a Deed of Trust which secured the Note. The Property subject to the Deed of Trust is located in James City County, Virginia. Plaintiff signed the Deed of Trust and initialed each preceding page prior to the signatory page. The Deed of Trust was recorded in the Office of the Clerk of Circuit Court of the City of Williamsburg and the County of James City. (Ex. 2 – Deed of Trust).

8.     By signing the Deed of Trust, Plaintiff "accept[ed] and agree[d] to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." (Ex. 2 – Deed of Trust at p. 14).

9.     The Deed of Trust provides, in relevant part: "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Ex. 2 – Deed of Trust ¶ 1).

10.     The Deed of Trust further provides:

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security

Active 21153175v1 241070.000043

Instrument, and Applicable Law.  There also might be one or more changes of the
Loan Servicer unrelated to a sale of the Note.

(Ex. 2 – Deed of Trust ¶ 20).

11.     The Deed of Trust identifies the Mortgage Electronic Registration Systems, Inc.

("MERS") as "the beneficiary under this Security Instrument."  "MERS is a separate corporation

that is acting solely as a nominee for Lender and Lender's successors and assigns."  (Ex. 2 –

Deed of Trust ¶ (E)).

12.     The Deed of Trust states:

> The beneficiary of this Security Instrument is MERS (solely as nominee for
> Lender and Lender's successors and assigns) and the successors and assigns of
> MERS.  This Security Instrument secures to Lender: (i) the repayment of the
> Loan, and all renewals, extensions and modifications of the Note; and (ii) the
> performance of Borrower's covenants and agreements under this Security
> Instrument and the Note.
>
> . . . .
>
> . . . .  Borrower understands and agrees that MERS holds only legal title to the
> interests granted by Borrower in this Security Instrument, but, if necessary to
> comply with law or custom, MERS (as nominee for Lender and Lender's
> successors and assigns) has the right:  to exercise any or all of those interests,
> including, but not limited to, the right to foreclose and sell the Property; and to
> take any action required of Lender including, but not limited to, releasing and
> canceling this Security Instrument.

(Ex. 2 – Deed of Trust at p. 4).

13.     The Deed of Trust allows for the recovery of certain costs related to acceleration

and foreclosure of the Loan.  Specifically, the Deed of Trust provides:  "Lender shall be entitled

to collect all expenses incurred in pursuing the remedies provided in this Section 22, including,

but not limited to, reasonable attorneys' fees and costs of title of evidence."  (Ex. 2 – Deed of

Trust ¶ 22).

14.     The Deed of Trust further provides for the substitution of the trustee:  "Lender, at

its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee

Active 21153175v1 241070.000043

appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by Applicable law."  (Ex. 2 – Deed of Trust ¶ 24).

15.     The Deed of Trust also includes a provision that requires the borrower to provide written notice and a reasonable opportunity to cure any alleged breach of the Loan contract:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Ex. 2 – Deed of Trust ¶ 20).

16.     HSBC is the current owner of the Loan.  (Ex. 1 – Note).

17.     Defendant Ocwen is the current servicer of the Loan.

18.     Plaintiff defaulted on his obligations under the Loan.

19.     On May 16, 2013, HSBC executed an Appointment of Substitute Trustees appointing co-defendant Poore Substitute Trustee, Ltd. ("Poore"), as substitute trustee. (Unnumbered Exhibit to Complaint – Appointment of Substitute Trustees).

20.     Plaintiff does not claim that any entities other than Defendants have attempted to enforce his obligations under the Loan.  (Complaint).

### III.     STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of the plaintiff's initial pleadings and does not resolve contests surrounding the facts or the merits of a claim.  *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  When considering a motion to dismiss, the court should accept as true all well-pleaded factual allegations and should view the complaint in a light

most favorable to the plaintiff. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). The court, however, need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Furthermore, a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Stidham v. Jackson*, 2:07-cv-00028, 2007 U.S. Dist. LEXIS 54032, at *13 (W.D. Va. July 26, 2007) (legal conclusions "couched as factual allegations need not be accepted as true"); *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Bald assertions that contradict the relevant documents are "unworthy of credence." *Pham*, 2012 U.S. Dist. LEXIS 51194, at *21; *see also United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) ("In the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails.") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 8(a)(2). A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. If any

factual allegations remain, the Court should then review them to determine if the plaintiff has stated a plausible claim for relief. *Id.*

## IV.   ARGUMENT

### A.   The Complaint Fails to Satisfy Basic Pleading Requirements

Plaintiff's Complaint utterly fails to meet the pleading requirements set forth in Fed. R. Civ. P.  8(a).  "Under Rule 8, a complaint must allege facts with sufficient specificity to inform defendants what they are accused of so that they can answer or respond to the allegations. Nothing in Plaintiff's Complaint provides Defendants with adequate notice of the allegations against them."  *Whitehead v. Paramount Pictures Corp.*, No. 1:08-cv-792, 2009 U.S. Dist. LEXIS 44838, at *17-18 (E.D. Va. May 28, 2009).  Instead, the Complaint is sprinkled with "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]." *Iqbal*, 556 U.S. at 678.  There are very few non-conclusory allegations that support any of the claims Plaintiff asserts against Defendants.

Moreover, Plaintiff provides little, if any, facts about each Defendant's role in the alleged wrongdoing.  *See Alliance Tech. Group, LLC v. Achieve 1, LLC*, No. 3:12-cv-701, 2013 U.S. Dist. LEXIS 4708, at *11-12 (E.D. Va. Jan. 11, 2013) ("In the Complaint now under review, many of the omnibus allegations against 'the Defendants' are conclusory, meriting minimal credit. . . .  In conducting the appropriate review, the Court must remain mindful of the indiscriminate character of those allegations against the 'Defendants.'  While such pleading is not prohibited *per se*, it impacts the Court's plausibility analysis with respect to [the moving defendants]."); *Blick v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-1, 2012 U.S. Dist. LEXIS 41265, at *18-19 (W.D. Va. Mar. 27, 2012) ("Courts have been quick to reject pleadings in which multiple defendants are lumped together and in which no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made.").

10

In Counts Two, Three, Four, Six, and Eight, Plaintiff merely states that "Ocwen and others" allegedly committed some unspecified acts that caused him harm.  Despite naming five parties to this action, Plaintiff fails to explain who the "others" are and what acts are attributable to them and what acts are attributable to Ocwen.  Therefore, Ocwen is unable to determine what acts it is actually being accused of doing.  Further, the Complaint provides no detail about the nature of the transactions between the parties.  Accordingly, Plaintiff's Complaint should be dismissed for his failure to comply with Fed. R. Civ. P. 8(a).

**B.**      **Plaintiff's Claims Are Barred Because He Failed to Provide the Required Notice.**

The clear terms of the Deed of Trust require Plaintiff to provide the lender with notice prior to commencing a judicial action against it.  (Ex. 2 – Deed of Trust ¶ 20).  Plaintiff has failed to plead that such notice was provided to Defendants before he filed his Complaint or otherwise instituted the present action against Defendants.  It is undisputed that Plaintiff is bound by the plain and unambiguous terms of the Loan agreement he voluntarily entered.  Accordingly, the Complaint must be dismissed with prejudice.  *See Niyaz v. Bank of Am.*, No. 1:10-cv-796, 2011 U.S. Dist. LEXIS 156, at *4-6 (E.D. Va. Jan. 3, 2011); *Johnson v. Countrywide Home Loans, Inc.*, No. 1:10-cv-1018, 2010 U.S. Dist. LEXIS 131112, at *5-7 (E.D. Va. Dec. 10, 2010); *Gerber v. First Horizon Home Loans Corp.*, No. 05-1554P, 2006 U.S. Dist. LEXIS 12225, at *4-6 (W.D. Wash. Mar. 8, 2006); *see also Barber Auto Sales, Inc. v. UPS*, 494 F. Supp. 2d 1290, 1296 (N.D. Ala. 2007).

**C.**      **Plaintiff's Claims in Count One Must Fail.**

The first Count of Plaintiff's Complaint is a prime example of an insufficient pleading under Rule 8.  In that count, Plaintiff merely alleges that "Ocwen committed intentional and malicious TORT."  Plaintiff further claims that Ocwen in some unspecified manner has ruined his reputation and ability to obtain a loan, and that he is now homeless as a result.  However

11

Plaintiff fails to state what malicious or intentional tort Ocwen committed.  Plaintiff does not even allege what actions that Ocwen allegedly took that would in any manner harm his reputation or ability to obtain financing.

To the extent that Plaintiff may be attempting to assert a claim for defamation, he has failed to plead facts sufficient to support such a claim.  "The elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.' 'To be actionable, the statement must be both false and defamatory.'" *Tharpe v. Saunders*, 285 Va. 476, 480-81, 737 S.E.2d 890, 892-93 (2013) (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005)).  Plaintiff has not alleged such facts here.

Additionally, any alleged defamatory statements would be protected by the doctrine of qualified privilege.  Qualified privilege can shield a defendant from a claim for defamation. *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134, 575 S.E.2d 858, 862-63 (2003).  The doctrine of qualified privilege:

> extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation.

*Isle of Wight County v. Nogiec*, 281 Va. 140, 152, 704 S.E.2d 83, 88 (2011) (quoting *Story v. Norfolk-Portsmouth Newspapers, Inc.*, 202 Va. 588, 590, 118 S.E.2d 668, 669 (1961)).

Here, any alleged defamatory statements made by Defendant Ocwen arose in the course of servicing Plaintiff's loan.  Ocwen clearly had an interest in Plaintiff's ability to pay under the loan.  Statements regarding Plaintiff's ability to pay under the loan, if any, including reporting default to other lenders or credit rating agencies, would be entitled the qualified privilege protection.

Ocwen acknowledges that "qualified privilege may be defeated by proof that the defamatory statements were made maliciously." *Fuste*, 265 Va. at 134, 575 S.E.2d at 862-63. "Malice sufficient to overcome a qualified privilege is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" *Id.* at 134-35, 575 S.E.2d at 863 (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 18, 325 S.E.2d 713, 727 (1985)).  While Plaintiff does allege that Ocwen committed a malicious tort, he has failed to set forth any statements that Ocwen allegedly made.  Accordingly, Plaintiff's claim must be dismissed.

Finally, to the extent that any claim for defamation is based on information provided to credit reporting agencies, such claims are preempted by the FCRA.  *See* 15 U.S.C. § 1681h(e) ("no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer"); *see also Ross v. FDIC*, 625 F.3d 808, 813 (4th Cir. 2010); *Marshall v. Swift River Acad., LLC*, 327 Fed. Appx. 13, 15 (9th Cir. 2009); *Purcell v. Bank of Am.*, 2011 U.S. App. LEXIS 20035 (7th Cir. Oct. 3, 2011); *Jeffrey v. Trans Union, LLC*, 273 F. Supp. 2d 725, 728 (E.D. Va. 2003).

**D.      Plaintiff's Claims in Count Two Must Fail.**

In Count Two, Plaintiff ambiguously alleges that Ocwen violated certain unspecified "federal housing laws."  However, Plaintiff fails to identify any federal statute that Ocwen allegedly violated.  Not only is this count completely devoid of factual details, but it does not even provide any "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiff's claims in Count Two should be dismissed.

13

E.      **Plaintiff's Claims in Count Three Must Fail.**

In Count Three, Plaintiff once again fails to identify a particular statute that Ocwen allegedly violated.   Instead, Plaintiff claims that Ocwen violated unidentified "federal laws regarding the UGMA lien on the property . . . ."   While Plaintiff cites the "Under Guardian/custodian Act for minors" in support of his claims, it does not appear that there is any such act.  To the extent that Plaintiff is attempting to reference the Uniform Gift to Minors Act, that act is a model code, not a federal statute.   Accordingly, Plaintiff's claims based on unidentified federal laws and the "UGMA" should be dismissed.

F.      **Plaintiff's Claims of Breach of Contract Based on Alleged Promises to Modify His Loan Must Fail.**

In Counts Three and Four, Plaintiff appears to allege that the impending foreclosure of his Property is improper because he was allegedly promised a loan modification.  To the extent that Plaintiff's claims are based on the alleged failure to modify the terms of his Loan or provide other loss mitigation assistance, Plaintiff's claims must be dismissed.

1.      **There is No Private Cause of Action Under HAMP**

It is well settled that HAMP does not provide a private cause of action for borrowers against lenders and loan servicers.  *Monton v. America's Servicing Co.*, No. 2:11-cv-678, 2012 U.S. Dist. LEXIS 117259, at *18 (E.D. Va. Aug. 20, 2012); *De Vera v. Bank of Am., N.A.*, No. 2:12-cv-17, 2012 U.S. Dist. LEXIS 87840, at *5 (E.D. Va. June 25, 2012); *Sherman*, 769 F. Supp. 2d at 761.  Accordingly, to the extent that Plaintiff's claims are based on the denial of a HAMP loan modification, his claims must fail.

2.      **Any Claim for Breach of the Covenant of Good Faith and Fair Dealing Must Fail**

To the extent that Plaintiff may be attempting to bring his HAMP claim under the guise of a claim for breach of the implied duty of good faith and fair dealing, his claim fails as a matter

14

of law.  *See, e.g.*, *De Vera*, 2012 U.S. Dist. LEXIS 87840, at *9 ("Courts have routinely dismissed similar HAMP claims that are disguised as a violation of the duty of good faith and fair dealing."); *Everette v. Bank of Am., N.A.*, No. 2:12-cv-18, 2012 U.S. Dist. LEXIS 58766, at *7-8 (E.D. Va. Apr. 26, 2012) ("Given that courts in this jurisdiction have held consistently that there is no private right of action under HAMP, this Court will not permit Plaintiffs to bring a HAMP claim under the guise of claims for breach of the covenants of good faith or fair dealing.").

Additionally, it is well established law in the Commonwealth of Virginia that such a duty does not apply to real estate contracts and, even if it did, it cannot overwrite the lender's express contractual right to foreclose on the Property.  *See, e.g.*, *Greenwood Assocs., Inc. v. Crestar Bank*, 248 Va. 265, 270, 448 S.E.2d 399, 402 (1994) (holding no obligation of good faith or fair dealing arises outside of Uniform Commercial Code); *Valik Co. v. First Union Nat'l Bank*, No. 16203, 1995 Va. Cir. LEXIS 1446, at *1 (Va. Cir. Sept. 5, 1995) ("The 'obligation of good faith' found in Section 8.1-203 . . . is inapplicable because the Uniform Commercial Code does not apply to . . . [t]he Agreement [that] concerns 'the creation or transfer of an interest in or lien on real estate"); *see also Albayero et al. v. U.S. Bank, N.A.*, No. 3:11-cv-201, 2011 U.S. Dist. LEXIS 114974, at *15 n.1 (E.D. Va. Oct. 5, 2011).

In the present case, the Note provides, "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."  (Ex. 1 – Note ¶ 6(B).  Further, the Deed of Trust grants the lender and its assigns the express contractual right to exercise the power of sale and to foreclose on the secured Property upon the borrower's default.  (Ex. 2 – Deed of Trust ¶ 22).  There is no dispute that Plaintiff defaulted on his obligations under the Loan.  Once Plaintiff defaulted under the Note, Defendants lawfully exercised their right to institute the

foreclosure process.   Defendants' lawful exercise of their contractual rights cannot create a breach of contract or breach of the implied covenant of good faith and fair dealing as a matter of settled law.

Additionally, the duty of good faith and fair dealing does not extend to the review and processing of loan modifications, absent an express contractual provision to the contrary. Neither the Note nor the Deed of Trust creates any duties on the part of Defendants to facilitate a loan modification or to enter into any forbearance or repayment plan.   Further, Plaintiff has not alleged that either the Note or the Deed of Trust create any contractual obligation specifying the level of review that Defendants were required to give Plaintiff's loan modification application. Accordingly, any claim for breach of good faith and fair dealing claim must be dismissed.   *See Chance v. Wells Fargo Bank, N.A.*, No. 3:12-cv-320, 2012 U.S. Dist. LEXIS 137507, at * 11-12 (E.D. Va. Sept. 25, 2012); *De Vera*, 2012 U.S. Dist. LEXIS 87840, at *9; *see also Monton*, 2012 U.S. Dist. LEXIS 117259, at *21; *Bennett*, 2012 U.S. Dist. LEXIS 54725, at *29 (E.D. Va. Apr. 18, 2012); *Correll v. Bank of Am., N.A.*, No. 2:11-cv-477, 2012 U.S. Dist. LEXIS 12960, at *10 (E.D. Va. Feb. 2, 2012).[4]

### 3.   The Statute of Frauds Bars Reliance on Any Alleged Verbal Representations of a Loan Modification

In the Commonwealth of Virginia, claims based on a verbal promise or agreement related to real estate, such as in regards to an alleged loan modification, are barred by the statute of

---

[4]   In a recent case, the Court found that the plaintiff stated a claim for breach of the duty of good faith and fair dealing based on allegations that the defendant mishandled his loan modification application.   *See Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10-cv-670, 2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012).   However, *Bourdelais* is readily distinguishable from the present case.   In *Bourdelais*, the plaintiff alleged that the defendant's incorrect representation of the eligibility requirements for the modification induced her to default on her loan obligations.   *Id.* at *14-15.   In the present case, Plaintiff's default was caused by a loss of income and occurred prior to Defendant's alleged conduct.   Accordingly, *Bourdelais* does not apply.

frauds.  *See Lindsay v. McEnearney Assocs.*, 260 Va. 48, 53 (2000) (holding that when "a contract is required to be in writing pursuant to Code § 11-2, any modification of that contract must also be in writing"); *see also* Va. Code §§ 11-2(6) & (7).  Thus, any alleged promise of a modification, absent a written modification to the deed of trust, is entirely unenforceable.  *See Locke v. Wells Fargo Home Mortg. & Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 126140 (S.D. Fla. Nov. 30, 2010) (holding Florida statute of frauds bars breach of contract claim for loan modification pursuant to HAMP.  Federal courts in other jurisdictions routinely dismiss claims in suits against servicers and lenders on this exact basis – namely, that an oral promise to modify a borrower's loan is unenforceable pursuant to the statute of frauds.  Thus, any claims based on such promise must be dismissed.  *See, e.g.*, *Newgent v. Wells Fargo Bank, N.A.*, No. 09-cv-1525, 2010 U.S. Dist. LEXIS 18476 *13 (S.D. Cal. March 2, 2010) (holding that "forbearance agreements altering a mortgage are covered by the statute of frauds"); *Safford v. Precision Funding*, No. 09-14925-BC, 2010 U.S. Dist. LEXIS 10884 *13 (E.D. Mich. Feb. 9, 2010) (holding plaintiff's breach of contract claim against loan servicer for alleged representation is "barred by the statute of frauds because Plaintiffs have not alleged breach of any written agreement"); *Schuhart v. Chase Home Fin.*, No. C-05-385, 2006 U.S. Dist. LEXIS 46574 *9-13 (S.D. Tex. 2006) (holding estoppel is inapplicable when defendant's alleged promise to modify plaintiff's loan was not in writing); *Ajami v. Indymac Mortg. Servs.*, No. 09-13488, 2009 U.S. Dist. LEXIS 107129 *6-8 (E.D. Mich. 2009) (dismissing plaintiffs' claims because verbal promises of loan modification are barred by statute of frauds).

In the present case, Plaintiff does not allege that Defendants executed a written loan modification agreement.  He merely claims that "[p]romises were made about the type of loan modification I was going to get."  Plaintiff's claims thus appear to be based, at least in part, on

alleged discussions with Defendants' representatives concerning the availability of loan work out and modification alternatives. To the extent that Plaintiff is relying on alleged verbal representations in support of his claim that he is entitled to a modification or other loss mitigation assistance, his claim must fail as such alleged representations are unenforceable under the statute of frauds.

**G.      Plaintiff's Claims in Count Five Must Be Dismissed.**

It is not clear what cause of action, if any, Plaintiff is attempting to assert in Count Five of his Complaint. Plaintiff does appear to allege that the "wrong lender" was attempting to collect on the Loan and foreclose on the Property. To the extent that Plaintiff is attempting to assert a "Show Me the Note" claim, his claim must fail as a matter of law.

As stated above, "Show Me the Note" claims have been "widely rejected as 'contrary to Virginia's non-judicial foreclosure laws.'" *Pham*, 2012 U.S. Dist. LEXIS 51194, at *11-12 (quoting *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. supp. 2d 714, 721 (W.D. Va. 2011)); *see also* Va. Code § 55-59(7). Quite simply, there is absolutely no requirement under Virginia law that a secured party must come to court to prove its authority or standing to foreclose on the secured property. *Gallant*, 766 F. supp. 2d at 721.

It is undisputed that the Note at issue in this case was specially endorsed to HSBC, "without recourse," by the prior holder, Fremont. (Ex. 1 – Note). "If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a "*special endorsement*." Va. Code § 8.3A-205(a) (emphasis in original). "When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person." *Id.* "Transfer of an instrument . . . vests in the transferee any right

18

of the transferor to enforce the instrument, including any right as a holder in due course."  Va. Code § 8.3A-203.  Accordingly, HSBC, as holder of the Note, has authority to enforce Plaintiff's Loan obligations.  *See Gibson v. Wells Fargo Bank, N.A.*, No. 1:10-cv-304, 2011 U.S. Dist. LEXIS 5391, at *5 (E.D. Va. Jan. 19, 2011) (finding that defendant had authority to foreclose as note holder when note was specially endorsed to defendant without recourse).

Further, "just as a noteholder is not 'required to come to a court of law and prove its authority or standing to foreclose on a secured property,' so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that it has the noteholder's authority."  *Pham*, 2012 U.S. Dist. LEXIS 51194, at *12 (quoting *Gallant*, 766 F. supp. 2d at 721).  "To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed."  *Id.*  "This result would be plainly contrary to Virginia law, which allows a trustee to foreclose on a loan in default, even if the original note cannot be found, without first seeking a court order."  *Id.* at *12-13.

Poore, as the substitute trustee, is merely an agent of the real party at interest here, HSBC, the holder of the Note.  *See id.* at 16.  "A nominal beneficiary and a substitute trustee under a deed of trust act at the noteholder's direction, and even if there were some reason to believe that such direction was not given . . . , Virginia law does not give plaintiffs a cause of action to complain."  *Pham*, 2012 U.S. Dist. LEXIS 51194, at *16.  As such, to the extent that Plaintiff may allege that the substitute trustee, Poore, did not have authority to foreclose on the Property, his claim is unavailing to say the least.

Plaintiff simply cannot feign surprise that the Note was transferred.  The plain terms of the Note and Deed of Trust clearly demonstrate the parties' intent to allow the Loan to be freely

19

transferred.   The plain and unambiguous terms of the Note provided, in relevant part:   "I understand that the lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder." (Ex. 1 – Note ¶ 1).  The Note further granted the note holder the right to make various decisions concerning the administration of Plaintiff's loan obligations and the response to Plaintiff's default.  The Deed of Trust further provides that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  (Ex. 2 – Deed of Trust ¶ 20).  The provisions of the Note and Deed of Trust confirm that HSBC, the current holder of the Note, has the authority to foreclose on the Property.  *See Bernardo*, 435 Fed. Appx. at 243.  "To conclude that [Plaintiff] should receive undisputed title to his property based on these facts would be fundamentally at odds with longstanding Virginia law."  *Bernardo*, 435 Fed. Appx. at 243.

**H.      The Appointment of the Substitute Trustee Was Valid**

**1.      Plaintiffs Lack Standing to Challenge the Appointment**

Plaintiff was not a party to the document appointing Poore as substitute trustee.  (Exhibit to Complaint – Appointment Substitute of Trustees).   HSBC appointed Poore as substitute trustee, and Plaintiff had no involvement in the appointment.   The intentions of the grantor, HSBC, could not be clearer: HSBC wished to appoint Poore to sell the Property at foreclosure. Plaintiff does not allege that the appointing document was altered after delivery to Poore or that it misrepresented the intentions of either party.  *See Bennett v. Bank of Am., N.A.*, No. 3:12-cv-34, 2012 U.S. Dist. LEXIS 54725, at *21 (E.D. Va. Apr. 18, 2012).

"Plaintiff also does not allege any particular way in which the method used to execute the documents harmed him."  *Bennett*, 2012 U.S. Dist. LEXIS 54725, at *21.  While a borrower may have an interest in avoiding foreclosure, the validity of the assignment does not affect whether he

20

owes his Loan obligations, but only to whom the borrower is obligated. *Livonia Prop. Holdings, L.L.C. v. 12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735 (E.D. Mich. May 13, 2010); *see also Bennett*, 2012 U.S. Dist. LEXIS 54725, at *22; *Bridge v. Aames Capital Corp.*, No. 1:09-cv-2497, 2010 U.S. Dist. LEXIS 103154 (N.D. Ohio Sept. 29, 2010). Accordingly, "Plaintiff does not have standing to challenge the validity of the appointment." *Bennett*, 2012 U.S. Dist. LEXIS 54725, at *20.

### 2.   HSBC Bank Had Authority to Appoint Poore as Substitute Trustee

"[E]ven if Plaintiff[s] had standing, [they] ha[ve] not alleged facts sufficient to undermine the validity of the appointment." *Id.* at *22.  The plain and unmistakable language of the Deed of Trust clearly authorizes HSBC, as the holder of the Note, to appoint a substitute trustee.  (Ex. 2 – Deed of Trust ¶ 24).  *See* Va. Code § 55-59(9); *see also Bolouri*, 2010 U.S. Dist. LEXIS 87170, at *11.  Because the Note is specially endorsed to HSBC, it is the "party secured by the deed of trust."  *Bolouri*, 2010 U.S. Dist. LEXIS 87170, at *11.  "Once appointed, the substitute trustee is empowered by Va. Code § 55-59(7) to foreclose and sell the property." *Id.* at *11-12.

"Finally, this record discloses no factual basis for concluding that any other entity besides [HSBC] possesses the Note." *Id.*  "This observation underscores the absurdity" of Plaintiff's apparent assertion that HSBC is not the lender. *Id.* at 23 n.14.  "If it is true that [HSBC] does not possess the Note, then it must also be true that another entity either possesses the Note or is entitled to rights as lender under the Note." *Id.*  As such, Plaintiff's implied assertion that HSBC does not possess the Note "depends on the incredible allegation that some unidentified entity acquired the Note . . . and yet sat idly by" as Plaintiff defaulted on his Loan obligations and HSBC began asserting rights reserved for the note holder. *Id.*  Plaintiff has not alleged that any

other entity has attempted to collect on the Note or otherwise require him to honor his contractual commitments.  Accordingly, Plaintiff's claims must be dismissed.

**I.**        **Count Six Must Fail Because it is a Mere Recitation of Facts and States No Cause of Action**

In Count Six, Plaintiff states that "Ocwen and others were aware of my identity theft and the death of my wife as recognized hardship situations and told me on many occasions DO NOT WORRY you will not lose your home."  Defendants express their deep sympathy for Plaintiff's loss.  However, Plaintiff has again failed to state any cause of action whatsoever in this count.

Further, to the extent that Plaintiff relies upon the alleged statement that he would not lose his home, such a statement amounts to nothing more than an illusory promise, which confers no legally enforceable right upon Plaintiff.  *See Young v. Citi Mortg., Inc.*, No. 5:12-cv-79, 2013 U.S. Dist. LEXIS 94046, at *25-28 (W.D. Va. May 23, 2013).  Accordingly, Plaintiff's Claims in Count Six must be dismissed.

**J.**        **Any Claim for Intentional Infliction of Emotional Distress Must Be Dismissed.**

In Count Seven, Plaintiff makes vague allegations of experiencing "unbearable" "emotional stress and pain" allegedly resulting from unspecified conduct by Ocwen.  To the extent that Plaintiff is attempting to assert a claim for the intentional infliction of emotional distress, that claim must fail because Plaintiff has failed to allege sufficient facts in support of such a claim.

To validly assert a claim for intentional infliction of emotion distress, a plaintiff must allege that "'1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.'" *Ogunde v. Prison Health Servs.*, 274 Va. 55, 65, 645 S.E.2d 520, 526 (2007) (quoting *Almy v. Grisham*, 273

22

Va. 68, 77, 273 Va. 68, 639 S.E.2d 182, 186 (2007)); *see also Russo v. White,* 241 Va. 23, 400 S.E.2d 160, 162 (1991) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). "[T]he tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008).

Here, Plaintiff only alleges that he is homeless and that he cannot obtain a loan. He further alleges that unidentified representatives of Ocwen allegedly "lied" to him. However, unsubstantiated accusations of dishonesty do not establish intentional or reckless behavior. Neither does Plaintiff provide any details that would suggest that the alleged misconduct was outrageous or intolerable. *Accord Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 761 (W.D. Va. 2007) ("Given that Defendants were within their rights to foreclose on Plaintiff's home because she did not tender valid payment, this conduct does not rise to the requisite level of outrageousness."). The general facts as alleged by Plaintiff simply cannot give rise to a claim for intentional infliction of emotional distress. Accordingly, any such claim must be dismissed.

## K.    Any Claim for Fraud Must Fail.

In Count Seven, Plaintiff alleges that unidentified representatives of Ocwen allegedly "lied" to him. To the extent that Plaintiff is asserting a claim for fraud, he has failed to plead fraud with the specificity and particularity required under Virginia law. *See Brooks v. Bankson*, 248 Va. 197, 206, 445 S.E.2d 473, 478 (1994) ; *see also Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997) ; *Tuscarora, Inc. v. B.V.A. Credit Corp.*,

23

218 Va. 849, 858, 241 S.E.2d 778, 784 (1978) ; *Koch v. Seventh St. Realty Corp.*, 205 Va. 65, 71, 135 S.E.2d 131, 135 (1964).   When a pleading fails to reveal the "identities of the agents, officers, and employees of [defendant] who are alleged to have perpetrated the fraud . . . or the details of the time and place where the fraudulent acts occurred," the allegations "lack the specificity required to make out a case of fraud.   *Tuscarora, Inc.*, 218 Va. at 858, 241 S.E.2d at 784.

The federal rules also require fraud to be pled with particularity.   *See* Fed. R. Civ. P. 9(b); *see also Leatherman v. Tarrrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).   The plaintiff "must allege more than mere conclusory allegations of fraud or the technical elements of the same."   *In re Balko*, 348 B.R. 684, 694 (W.D. Pa. Bankr. Ct. 2006) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1987)).   "Rule 9(b) requires that plaintiffs plead 'with particularity . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."   *In re Mut. Funds Inv. Litig.*, 556 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

In his Complaint, Plaintiff fails to identify any specific misrepresentation or fraudulent conduct by Defendants.   Neither does Plaintiff identify any employee, agent, officer, or representative of Defendants who allegedly misrepresented any facts to Plaintiff.   Plaintiff also fails to allege the location at which any alleged misrepresentations were made.   Accordingly, any claim for fraud must be dismissed because such a claim is "too vague, indefinite, and conclusory to state a cause of action" for fraud.   *See Tuscarora, Inc.*, 218 Va. at 858, 241 S.E.2d at 784; *see also Ward's Equip., Inc.*, 254 Va. at 385, 493 S.E.2d at 520.

**L.**     **Plaintiff's Tort Claims Are Barred by the Economic Loss Rule**

Even if Plaintiff had properly identified any tort claims, such claims would be barred by the economic loss rule because the source of the duty between Plaintiff and Defendants arises solely from a contractual obligation set forth in the Note and Deed of Trust.  Under the economic loss rule, a tort claim, such as fraud or negligence, must be based on breach of a duty arising independently of contractually owed obligations.  *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998); *see also Dur v. W. Branch Diesel*, 240 Fed. Appx. 568, 572-53 (4th Cir. 2007).

To determine whether a cause of action sounds in tort or in contract, the Court must ascertain the source of the duty violated.  *Id.*  If the complaint would not give rise to any cause of action absent a contract, then the action is founded upon contract, not tort.  *Id.*  "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses."  *Filak v. George*, 267 Va. 612, 617, 594 S.E.2d 610, 613 (2004).  Failure to allege sufficient facts of an independent obligation sounding in tort is grounds for dismissal under the Economic Loss Rule. *See Princeton Woods, LLC v. PNC Bank*, No. 1:09cv905, 2009 U.S. Dist. LEXIS 100877, *18-22 (E.D. Va. Oct. 28, 2009); *see also Wigand v. Costech Techs., Inc.*, No. 3:07cv440, 2008 U.S. Dist. LEXIS 743 *29 (E.D. Va. Jan. 4, 2008).

In the present case, Plaintiff does not allege that Defendants owed him any common law duties independent of the loan documents.  Instead, Plaintiff's tort claims appear to arise solely out of the contractual relationship between Defendants and Plaintiff.  The only duties Defendants owed Plaintiff are contractual and the tort claims should be dismissed with prejudice.

**M.**   **Any Claim for Breach of Contract Must Fail**

To the extent that Plaintiff may be attempting assert a claim for breach of contract in Counts Three and Eight, his claims must fail.  In Virginia, the elements of a cause of action for breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) defendant's breach or violation of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.  *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009); *Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006); *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

Plaintiff's Complaint is devoid of any factual allegations to support a breach of contract claim.  Plaintiff does not specify any contractual provision or term of the loan documents that he alleges was breached.  Instead, Plaintiff merely alleges that "[f]oreclosure on the property violates the lien and breaches the contract," and that "Ocwen and others violated specific contractual obligations that resulting [sic] in breaching a contract with specific performance." These allegations are not sufficient to assert a claim for breach of contract.  *See Young*, 2013 U.S. Dist. LEXIS 94046, at *18-19 (holding that complaint did not state valid claim for breach of contract because conclusory allegations that defendant "breached the contract" fell fatally short of demonstrating any entitlement to relief).

Clearly, Plaintiff's lawsuit is nothing more than a shotgun, cut and paste pleading that is intended as a vehicle to allow him to escape his own contractual obligations and thwart the impending foreclosure of the Property.  His efforts must fail as a matter of law.

**N.**   **The Ocwen Board Must Be Dismissed as a Party Defendant**

Plaintiff makes absolutely no claims against the Ocwen Board or any of its members, and there are no specific allegations concerning the Ocwen Board in Plaintiff's Complaint.  Even if

Plaintiff had asserted any claims against the Ocwen Board, such claims would fail as the members of a limited liability company have no liability for the debts, obligations, or liabilities of the company.  *See* 6 Del. Code § 18-303 ("[T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."); *see also* Fla. Stat. § 608.4227 ("Except as provided in this chapter, the members, managers, and managing members of a limited liability company are not liable, solely by reason of being a member or serving as a manager or managing member, under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company."); Va. Code § 13.1-1019 (providing that "no member, manager, organizer or other agent of a limited liability company shall have any personal obligation for any liabilities of a limited liability company, whether such liabilities arise in contract, tort or otherwise, solely by reason of being a member, manager, organizer or agent of a limited liability company"); Va. Code § 13.1-1020; *McFarland v. Va. Ret. Servs. of Chesterfield, LLC*, 477 F. Supp. 2d 727, 738-39 (E.D. Va. 2007).

Because Plaintiff fails to make any allegations against the Ocwen Board or any of its members, and the Ocwen Board members are shielded from personal liability from debts, obligations, and liabilities of the company, Plaintiff cannot establish a claim against the Ocwen Board.  As such, the Ocwen Board must be dismissed as a party defendant.

Active 21153175v1 241070.000043

## V.   **CONCLUSION**

Clearly, there is absolutely no authority supporting any of Plaintiffs' claims.  *See Pham*, 2012 U.S. Dist. LEXIS 51194, at *29-30.   Accordingly, Defendants respectfully request this Court to enter an Order granting this Motion and dismissing Plaintiff's Complaint, and all claims therein, with prejudice, and for such other and further relief as the Court deems appropriate and just.

Dated: August 16, 2013                    Respectfully submitted,

                                          OCWEN LOAN SERVICING , LLC,
                                          OCWEN LOAN SERVICING BOARD OF
                                          DIRECTORS


                                          By: _____/s/ Andrew B. Pittman_____
                                                      Of Counsel

Jason E. Manning (VSB No. 74306)
Andrew B. Pittman (VSB No. 47295)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: jason.manning@troutmansanders.com
E-mail: andrew.pittman@troutmansanders.com

Active 21153175v1 241070.000043

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August, 2013, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

### <u>Counsel for Defendant The Hunoval Law Firm</u>

Brian A. Calub, Esq.
Jared Slater, Esq.
501 Minuet Lane, Suite 104-A
Charlotte, NC 28217
Email: brian.calub@hunovallaw.com
Email: jared.slater@hunovallaw.com

### <u>Counsel for Defendant Poore Substitute Trustee, Ltd.</u>

Brian A. Calub, Esq.
Jared Slater, Esq.
501 Minuet Lane, Suite 104-A
Charlotte, NC 28217
Email: brian.calub@hunovallaw.com
Email: jared.slater@hunovallaw.com

I further certify that a true and correct copy of the foregoing was sent via first class mail, postage prepaid, to the following:

### <u>Pro Se Plaintiff Frank Bonadio</u>

Frank Bonadio
P.O. Box 5391
Williamsburg, VA 23188

              /s/ Andrew B. Pittman
Andrew B. Pittman (VSB No. 47295)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone:  (757) 687-7707
Facsimile:   (757) 687-1556
E-mail: andrew.pittman@troutmansanders.com

Active 21153175v1 241070.000043